Filed 12/20/22  P. v. Nunez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

---

THE PEOPLE,

    Plaintiff and Respondent,

        v.

ISAIAS NUNEZ,

    Defendant and Appellant.

G061072

(Super. Ct. No. 02CF2185)

O P I N I O N

---

Appeal from a postjudgment order of the Superior Court of Orange County, Gary S. Paer, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles Ragland, Assistant Attorney General, Robin Urbanski and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

In 2004, appellant Isais Nunez was convicted of second degree murder for aiding and abetting the fatal shooting of a rival gang member. In this proceeding, he contends there is insufficient evidence to support the trial court's denial of his petition for resentencing under Penal Code section 1170.95.[1] However, the record contains substantial evidence appellant directly aided and abetted the shooting, which renders him ineligible for resentencing. We therefore affirm the trial court's order.

FACTUAL AND PROCEDURAL BACKGROUND

On September 16, 2001, appellant was a member of a criminal street gang known as Sycamore Street. The gang had been feuding with a rival outfit called UBC, and on the morning of the 16th, appellant talked about getting a gun from someone in his gang. The record does not disclose whether appellant actually succeeded in that regard. However, that afternoon he was driving in UBC territory with fellow Sycamore Street member Alejandro Mejia when they came upon a carload of UBC members waiting at a stop sign. Appellant abruptly stopped his vehicle in the middle of the street, allowing Mejia to alight from the passenger door with a gun in his hand. Mejia fired several shots at the UBC members, hitting and killing Jesse Renteria. Then he got back in appellant's vehicle, and they sped off together.

After the shooting, appellant told members of his gang that he and Mejia had shot someone from UBC. He warned of possible payback from UBC and then headed to Mexico for a few months. Upon arrest, he initially denied any involvement in Renteria's murder but eventually admitted he was with Mejia when the incident unfolded. Appellant claimed he was just giving Mejia a ride at the time and did not know he was armed or intending to shoot anyone. He said he was surprised when Mejia exited his vehicle and opened fire on the victims' car.

---

[1] That statute has since been renumbered as Penal Code section 1172.6. (Stats. 2022, ch. 58, § 10.) Because that change was nonsubstantive and it occurred after briefing in this case was complete, we will cite to Penal Code section 1170.95 for ease of reference. All further statutory references are to the Penal Code.

2

At trial, a gang expert testified that in the weeks leading up to the shooting, UBC members had been "tagging," i.e., spray painting provocative graffiti, in Sycamore Street territory. The expert said that in the underground world of criminal street gangs, such territorial intrusions are considered highly disrespectful and are expected to be met with stern retaliation. If the retaliation took the form of a drive-by shooting, the driver and shooter would be expected to work together and back each other up. And if they were successful in terms of hitting their target, they would not only enhance the reputation of their gang, they would garner individual respect from their fellow gang members for carrying out such a brazen criminal act.

The trial court instructed appellant's jury it could find him guilty of murder if he directly aided and abetted that offense, or if murder was a natural and probable consequence of a lesser crime he and Mejia intended to commit. Without specifying which theory it adopted, the jury convicted appellant of second degree murder, for which he was sentenced to an indeterminate term of 15 years to life in prison.

On appeal, we affirmed the judgment, rejecting appellant's claim the gang expert's testimony rendered his trial unfair. (*People v. Nunez* (Mar. 24, 2006, G034426) [nonpub. opn.].) Appellant also came up empty in the California Supreme Court and Federal District Court. However, he received new hope in 2018, when the Legislature enacted Senate Bill No. 1437. As relevant here, that bill eliminated the natural and probable consequences theory for the crime of murder. It also added section 1170.95, which allows defendants convicted of murder under that theory to obtain relief if no other theory of murder justified their conviction.

Upon receiving appellant's petition for resentencing, the trial court found he made a prima facie case for relief and set an evidentiary pursuant to section 1170.95, subdivision (d)(3). At the hearing, the parties stipulated the trial court could consider the record of conviction in appellant's underlying case to determine whether he was eligible for resentencing. Neither side offered any new evidence for the court's consideration.

After reviewing the documentary record, the trial court found beyond a reasonable doubt that appellant could be convicted of Renteria's murder under the still-valid theory of direct aiding and liability. It therefore denied his petition for resentencing.

DISCUSSION

Appellant contends there is insufficient evidence to support the trial court's denial order. We disagree.

As a preliminary matter, we first take up appellant's claim we should forego the deferential standard of review that typically governs sufficiency-of-the-evidence claims. Because the trial court decided his case based on the documentary record of his underlying trial, and not live witnesses, appellant argues there is no reason to give the trial court's factual findings any deference because we are in as good of position as the trial court to make our own factual findings from the record. Therefore, we should apply de novo review and only affirm if the record convinces us beyond a reasonable doubt that appellant directly aided and abetted the shooting.

However, as an appellate court, our primary responsibility is to review trial court findings, not make them ourselves. Appellant correctly points out that there are some legally oriented appellate issues involving mixed questions of law and fact where deference is not accorded to the trial court's factual findings when they are derived from a cold, documentary record. (See, e.g., *People v. Vivar* (2021) 11 Cal.5th 510, 528 [motion to withdraw guilty plea for failure to advise of immigration consequences]; *In re Long* (2020) 10 Cal.5th 764, 774 [ineffective assistance of counsel claim in habeas proceeding]; *People v. Duff* (2014) 58 Cal.4th 527, 551 [motion to suppress statements taken in violation of the Fifth Amendment].) But in this case, appellant's petition turned on a purely factual assessment of his mental state and his actions at the time of the shooting. Indeed, the trial court's factual findings on these issues were solely determinative of his eligibility for resentencing. Under those circumstances, there is "no reason to withhold the deference generally afforded to such factual findings" even though

4

"the trial court [was] bound by and relie[d] solely on the record of conviction to determine [appellant's] eligibility." (*People v. Perez* (2018) 4 Cal.5th 1055, 1066 [while a petition for resentencing under Proposition 36 is typically decided on a purely documentary record, the substantial evidence standard of review still applies on appeal]; *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1096-1097 [same for resentencing requests made pursuant to Proposition 47].) Therefore, as our colleagues have done (*People v. Sifuentes* (2022) 83 Cal.App.5th 217, 232-233; *People v. Clements* (2022) 75 Cal.App.5th 276, 297), we conclude the substantial evidence standard of review applies when, as here, the trial court denies a petition for resentencing based solely on a documentary record.

Under that standard, the test is not whether the prosecution met its burden of proving beyond a reasonable doubt that appellant is ineligible for resentencing, but whether any rational trier of fact could have so found. (*People v. Williams* (2020) 57 Cal.App.5th 652, 663.) In making that determination, "'we review the evidence in the light most favorable to the prosecution and presume in support of the [order] the existence of every fact the [trial judge] could reasonably have deduced from the evidence. [Citation.] "Conflicts [in the evidence] . . . subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the . . . truth or falsity of the facts upon which a determination depends. [Citation.]"' [Citation.]" (*Ibid*.) "Although we must ensure the evidence is reasonable, credible, and of solid value" (*People v. Jones* (1990) 51 Cal.3d 294, 314), reversal is not warranted unless "''"upon no hypothesis whatever is there sufficient substantial evidence to support the [trial court's ruling].""' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

Looking at the record from this perspective, we are convinced there is sufficient evidence to support the trial court's ruling. As we have explained, the central question presented at the evidentiary hearing was whether appellant directly aided and

5

abetted Renteria's murder. To establish liability under that theory, the prosecution had to prove appellant had murderous intent, meaning he either intended to kill or was consciously indifferent to the life-threatening danger created by his actions. (*People v. Gentile* (2020) 10 Cal.5th 830, 850.) It also had to show that he actually encouraged or assisted Mejia in carrying out the murder. (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)

Claiming he neither helped Mejia nor shared his murderous intent, appellant insists the evidence comes up short on both of these requirements. But we feel there is strong circumstantial evidence that both he and Mejia were out to murder a member of UBC on the day of the shooting.

UBC had been antagonizing appellant's gang by tagging in its territory. The gang expert testified this necessitated retaliation by appellant's gang, lest it lose face in the gang community. He opined payback in the form of a drive-by shooting would suffice to preserve Sycamore Street's reputation, and he explained how the shooter and the driver would have to work together to carry out such a shooting. He also made it clear that successfully executing a drive-by shooting against a rival gang member would have considerable reputational benefits for the shooter, the driver and their gang.

These motivational circumstances set the stage for Renteria's murder. That day, appellant talked about getting a gun from one of his fellow gang members. Then he drove with Mejia into UBC territory and abruptly pulled up in the middle of the street in close proximity to where Renteria and his crew were waiting at a stop sign. From that vantage point, Mejia was able to exit appellant's vehicle and carry out the shooting with no resistance from the victims.

While appellant told the police he had no idea Mejia was armed or intended to shoot anyone, the trial judge was not required to accept this claim. Indeed, the fact appellant bragged to other members of his gang about the shooting and fled to Mexico in its wake casts serious doubt on the veracity of his innocent-bystander claim.

6

All told, we are satisfied there is substantial evidence appellant directly aided and abetted Renteria's murder. Appellant's presence at the scene, his gang association with Mejia, his conduct before and after the shooting, and his motive of retaliation all support the trial court's finding he actively and knowingly assisted Mejia with malice aforethought. We therefore reject his challenge to the sufficiency of the evidence.

## DISPOSITION

The trial court's order denying appellant's petition for resentencing is affirmed.

BEDSWORTH, J.

WE CONCUR:

O'LEARY, P. J.

MOORE, J.

7